# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OSRAM SYLVANIA INC., <br><br> Plaintiff, <br><br> v. <br><br> CURTIS INTERNATIONAL, LTD. <br><br> Defendant. | Civil Action No. 1:16-cv-12207 |

## COMPLAINT

Plaintiff OSRAM SYLVANIA Inc. ("Sylvania"), by its undersigned counsel, Kilpatrick Townsend & Stockton LLP, as and for its Complaint against Defendant Curtis International, Ltd. ("Defendant"), states:

## NATURE OF THIS ACTION

1. This is an action at law and in equity for trademark infringement, unfair competition, false designation of origin, and unfair and deceptive trade practices under the Trademark Act of 1946, 15 U.S.C. § 1051 et seq. ("Lanham Act"); and for breach of contract and unfair competition under the common law.

## PARTIES

2. Sylvania is a corporation organized under the laws of the State of Delaware, with its principal place of business at 200 Ballardvale Street, Wilmington, Massachusetts 01887.

3. Upon information and belief, Defendant is a corporation organized and existing under the laws of Ontario, Canada, having its principal place of business at 315 Attwell Drive, Etobicoke, Ontario, Canada M9W 5C1.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338. This Court has jurisdiction over Sylvania's related state and common law claims pursuant to 28 U.S.C. §§ 1338 and 1367.

5. This Court has personal jurisdiction over Defendant because, on information and belief, Defendant transacts business within this Commonwealth, has committed tortious acts or omissions within this Commonwealth, and has otherwise established contacts within this Commonwealth sufficient to make the exercise of personal jurisdiction proper, and because Defendant agreed to be subject to personal jurisdiction in this Court in an agreement that is integral to this action.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

7. Sylvania, a leading lighting manufacturer in North America, develops, manufactures, and markets a wide range of lighting products designed to save energy, improve the quality of light, and meet sustainability goals for businesses, industries, and consumers. Sylvania is headquartered in Massachusetts, where it has been located since the early 1900s.

8. Sylvania is the owner of the well-known SYLVANIA trademark in North America, including the United States, Canada, Mexico, and Puerto Rico, for lighting products and a broad range of other goods and services.

9.  The SYLVANIA trademark is one of the world's best-known trademarks for lighting products and a broad range of other goods and services. The trademark is a valuable asset of Sylvania.

10. Sylvania owns numerous federal trademark registrations for the SYLVANIA mark in the United States, including the following:

| Reg. No. | Goods |
| --- | --- |
| 0434729 | Fluorescent lamps in International Class 11. |
| 1349158 | Decorative night electric lamps in International Class 11. |
| 1411188 | Light meter in International Class 9. |
| 1414881 | Starters for fluorescent lamps in International Class 11. |
| 2281108 | Computer software, computer disks and cd roms featuring information relating to lighting, lighting products, lighting design and lighting technology in International Class 9. |
| 2446625 | Computer and video monitors; video and sound recording and reproducing apparatus, namely, video cassette recorders, televisions, combination televisions and video cassette recorders, video disc players and radios in International Class 9; Maintenance and repair of electrical and electronic apparatus in International Class 37. |
| 2844907 | Conducting business incentive award programs to promote ecology in the field of electrical lighting in International Class 35. |
| 2875127 | House mark for a line of electronic apparatus, home entertainment apparatus, telecommunication apparatus, communication apparatus, audio and video apparatus in International Class 9. House mark for a line of lighting in International Class 11. |
| 3197538 | Indoor/outdoor digital timers in International Class 9. |
| 3315582 | Lights for vehicles in International Class 11. |
| 3535452 | Led lighting components, namely, power supplies and led modules in International Class 9. |
| 3714701 | Headphones and earphones in International Class 9. |

| Reg. No. | Goods |
|---|---|
| 3714703 | Services in the field of lighting, namely, installation and replacement of lighting ballasts and fixtures in International Class 37. |
| 4084103 | Holiday lighting consisting of incandescent and LED lighting in International Class 11. |
| 4084109 | Pre-lit artificial Christmas trees in International Class 29. |
| 4090468 | Heat sinks for use in electronic components and heat sinks for use in light-emitting diodes in International Class 9.<br><br>Heat sinks sold as a component part of LED lamps, LED light bulbs and LED light fixtures in International Class 11. |
| 4172205 | Mixers; electric food blenders; electric food processors; electric can openers; electric knives; vacuum cleaners; multi-purpose steam cleaners; generators of electricity; compressed air pumps in International Class 7.<br><br>Batteries; battery chargers; extension cords; lighted footswitch cord, namely, foot-operated light switch and extension cord sold together as a unit; multi-outlet power strips; voltage surge protectors; indoor / outdoor grounded electrical outlets; grounded adapters; indoor / outdoor remote controls for lighting, stereos systems, televisions, and video and audio recorders; wireless remote controls for lighting, stereo systems, televisions, and video and audio recorders; electric and steam irons; jumper cables; emergency auto kits comprised of jumper cables and flashlights; fuse packs, namely, multiple fuses sold together as a unit; remote control starters for vehicles; scales; thermometers; thermostats; digital hand-held video and audio recorders; scanners; battery jump starters in International Class 9.<br><br>Blood pressure monitors; electric massage apparatus; heating pads for medical purposes; thermometers for medical purposes in International Class 10.<br><br>Portable electric fans; electric space heaters; electric toasters; electric stove burners; electric toaster ovens; electric indoor grills; electric slow cookers; electric rice cookers; electric coffee makers; electric espresso machines; electric hot pots; electric omelet makers; electric waffle makers; electric griddles; electric deep fryers; electric popcorn poppers; spotlights; portable utility lights, namely, drop lights sold as a unit with an electrical cord; portable work lights; heating pads not for medical purposes; humidifiers; personal sanitizers consisting of electric ultraviolet wands for killing bacteria in International Class 11. |

True and correct copies of these registrations (the "SYLVANIA Registrations") are attached as **Exhibit 1**.

11. Many of the SYLVANIA Registrations are incontestable, including U.S. Reg. Nos. 3714701, 3714703, 3315582, 3535452, 3197538, 2844907, 2883027, 2875127, 2281108, 2446625, 1414881, 1411188, 1349158, 0434729.

12. In addition to the SYLVANIA Registrations, Sylvania owns strong common law rights in the SYLVANIA mark in the United States.

13. Starting at least as early as 1939, long before any use by Defendant of the SYLVANIA mark, Sylvania extensively and exclusively has used the SYLVANIA mark in connection with lighting and a broad range of other goods and services. In addition, Sylvania also licenses third parties to use the SYLVANIA mark in connection with lighting and a range of other goods and services.

14. By virtue of its extensive use of the SYLVANIA mark in the United States, Sylvania has established strong trademark rights in the SYLVANIA mark and has, under United States law, the exclusive right to use the SYLVANIA mark in connection with lighting and a broad range of other goods and services.

15. The SYLVANIA mark is strongly associated with Sylvania in connection with lighting and a broad range of other goods and services. The presence of the SYLVANIA mark indicates to consumers that the goods bearing or provided under it and/or services provided under it originate from or are otherwise sponsored, licensed, endorsed, or authorized by Sylvania.

**A.    THE LICENSE AGREEMENT**

16. On December 1, 2002, the parties entered into a trademark license agreement (the "Original Agreement"), which expired on April 30, 2012.

17. On June 1, 2011, before the Original Agreement expired, the parties entered into another license agreement (the "Agreement"), which superseded the Original License Agreement.

18. The Agreement sets out, *inter alia*, the terms and conditions pursuant to which Defendant was authorized to use the SYLVANIA mark.

19. The Agreement also acknowledges that Sylvania "is the owner in the United States, Puerto Rico, Canada, and Mexico of the *SYLVANIA* trademark and related trademarks, copyrights, designs, and trade dress . . . ."

20. Further, Section 2.9 of the Agreement expressly states that "Nothing in this Agreement shall be construed as an assignment or grant to [Defendant] of any right, title, or interest in the Trademarks, or in any copyright, design, trademark, trade dress, domain name, or other property right of [Sylvania] beyond the license in Trademarks expressly granted herein." The term "Trademarks" is defined in the Agreement as:

> [T]he word "Sylvania" in any form or style, the *SYLVANIA* trademark, and the related trademarks, slogans, copyrights, designs, and trade dress listed in Schedule A, all being subject to applicable conditions, limitations, and/or restrictions on the license or usage of any such trademark, slogan, copyright, design, or trade dress set forth in this Agreement . . . .

21. Additionally, pursuant to Sections 4.1, 4.3, and 4.7 of the Agreement (as amended by Amendment #2, effective June 1, 2012), Defendant was subject to specific minimum royalty obligations, which required Defendant to pay Sylvania minimum earned royalty amounts for fiscal years 2014, 2015, and 2016. Pursuant to Sections 4.4 and 4.7 of the Agreement, these minimum earned royalty payments were due, at the latest, by June 30, 2014, June 30, 2015, and June 30, 2016, respectively.

22. Pursuant to Section 9.1 of the Agreement, the initial term of the Agreement was from the Effective Date, June 1, 2011, through May 31, 2016. Specifically, Section 9.1 of the Agreement states, "The Initial Term of this Agreement shall commence on the Effective Date . . . and shall expire on May 31, 2016."

23. Pursuant to Section 9.2 of the Agreement (as amended by Amendment #2, effective June 1, 2012), Defendant had the option to renew the Agreement for an additional five-year term, but only if certain conditions precedent were met—namely, Defendant had to have earned royalties for its fiscal year 2016 equal to or exceeding the required minimum.

24. In addition to this condition precedent and also pursuant to Section 9.2 of the Agreement (as amended by Amendment #2, effective June 1, 2012), in order to exercise the option to renew the Agreement, Defendant had to (1) send Sylvania a written notice by May 31, 2015, which included (a) its exercise of the option to renew under Section 9.2, and (b) its representation that its good-faith projected earned royalties for its fiscal year 2016 would equal or exceed the required minimum.

25. Specifically, Section 9.2 of the Agreement (as amended by Amendment #2, effective June 1, 2012) states:

> 9.2 [Defendant] shall have the option to renew this Agreement for an additional five-year term ("Second Term") if [Defendant's] earned royalties for its fiscal year 2016 equal or exceed [the required minimum]). [Defendant] shall exercise this option on or before May 31, 2015, by sending a written notice to OSI including the following:
>
> (a) [Defendant's] exercise of its option to renew this Agreement under this Section 9.2; and
>
> (b) [Defendant's] representation that its good-faith projected earned royalties for fiscal year 2016 will equal or exceed [the required minimum].

26. Lastly, Section 13.7 of the Agreement states that the Agreement:

7

> [S]hall be governed and interpreted according to the laws of the Commonwealth of Massachusetts and the United States applicable to agreements entered into and performed in Massachusetts. In the event a dispute should arise under or in connection with this Agreement that the parties will not or cannot resolve without litigation, the parties shall resolve the dispute in an appropriate state or federal court in Massachusetts. Both parties agree to be subject to the personal jurisdiction the state courts of Massachusetts and the federal courts in Massachusetts for resolving any dispute under this Agreement.

**B.     EXPIRATION OF THE AGREEMENT**

27.     On April 21, 2015, Defendant sent Sylvania a letter, the body of which stated in its entirety:

> This letter will serve to notify Osram Sylvania Inc. of our intention to renew our agreement as per Article IX paragraph 9.2 to the second term as per our trademark license agreement dated March 17, 2011. However, as per the agreement and as previously advised the minimum royalties need to be revised to reflect current market conditions.

28.     Defendant's April 21, 2015, letter contained no "representation that its good-faith projected earned royalties for fiscal year 2016 will equal or exceed" the required minimum, as required by Section 9.2 of the Agreement, and as of May 31, 2015, the deadline by which Defendant had to renew the Agreement in accordance with its terms, Defendant had made no such representation to Sylvania, in writing or otherwise. Indeed, as of the filing of this Complaint, Defendant has made no such representation to Sylvania, in writing or otherwise.

29.     Further, Defendant's earned royalties for fiscal year 2016 were less than the required minimum.

30.     Accordingly, the Agreement expired by its own terms on May 31, 2016.

**C.     DEFENDANT'S UNLAWFUL CONDUCT**

31.     On May 17, 2016, Sylvania sent Defendant a letter noting that because Defendant failed to comply with Section 9.2 of the Agreement, Sylvania was not obligated to renew the

Agreement, nor would Sylvania renew the Agreement, and that the Agreement expired by its express terms.

33. In response, Defendant sent Sylvania a letter on June 2, 2016, claiming that Defendant "definitely did renew," but failing to address Defendant's failure to comply with Section 9.2 of the Agreement.

33. Over the course of the next few months, the parties exchanged additional correspondence in an effort to reach an amicable resolution of this matter.

34. On August 12, 2016, the parties entered into a Standstill Agreement, pursuant to which the parties agreed to forbear from litigating this dispute until September 10, 2016. The parties later extended the term of the Standstill Agreement through October 31, 2016.

35. After the expiration of the Agreement on May 31, 2016, despite Sylvania's explicit notice to Defendant that Defendant failed to properly renew the Agreement and without authorization or approval from Sylvania, Defendant continued promoting, distributing, offering for sale, and selling goods bearing one or more identical, substantially indistinguishable, or confusingly similar imitations of the SYLVANIA mark ("Infringing Goods"), including on its website, *www.curtisint.com*. True and correct copies of screenshots from Defendant's website showing representative examples of such Infringing Goods are attached as **Exhibit 2**.

36. Indeed, as of the filing of this Complaint, Defendant is still promoting, distributing, offering for sale, and selling Infringing Goods on its website.

37. The Infringing Goods are similar to and compete with goods sold by Sylvania and its licensees and affiliates, and on information and belief, the parties' respective goods are sold through identical channels of trade.

9

38.     All of the Infringing Goods bear designations that are confusingly similar to the SYLVANIA mark.

39.     Defendant's promotion, distribution, offer for sale, and sale of the Infringing Goods and use of identical, substantially indistinguishable, and/or confusingly similar imitations of the SYLVANIA mark is likely to deceive, confuse, and mislead actual and prospective purchasers before, during, and after purchase into believing that the Infringing Goods are manufactured, distributed, licensed, sponsored, endorsed, or authorized by, or in some manner associated with Sylvania, which they are not.

40.     Defendant was very familiar with Sylvania's rights in the SYLVANIA mark when Defendant continued advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods after the Agreement expired.

41.     On information and belief, Defendant was aware or should have been aware that the sale of Infringing Goods would likely cause confusion among consumers. Indeed, on information and belief, Defendant knowingly, willfully, intentionally, and maliciously adopted and/or used identical, substantially indistinguishable, and/or confusingly similar imitations of the SYLVANIA mark.

42.     Defendant has acted in bad faith and in knowing disregard of Sylvania's rights.

43.     The likelihood of confusion, mistake, and deception engendered by Defendant's misappropriation of the SYLVANIA mark is causing irreparable harm to the goodwill symbolized by the SYLVANIA mark and the reputation for quality that it embodies.

44.     Upon information and belief, by virtue of its unlawful conduct, Defendant has made profits and gains to which it is not entitled in law or equity.

45. Additionally, pursuant to the Agreement, Defendant failed to meet its minimum earned royalty obligations for fiscal years 2014, 2015, and 2016.

**FIRST CLAIM FOR RELIEF**
**(Federal Trademark Infringement)**

46. Sylvania repeats and incorporates by reference the allegations in the preceding paragraphs.

47. Defendant has used in commerce marks that are confusingly similar to the federally registered SYLVANIA mark in violation of 15 U.S.C. § 1114.

48. Defendant's use of confusingly similar imitations of the federally registered SYLVANIA mark is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's goods are manufactured or distributed by Sylvania, or are associated or connected with Sylvania, or have the sponsorship, endorsement, or approval of Sylvania.

49. Defendant's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception among members of the trade and public, and, additionally, injury to Sylvania's goodwill and reputation as symbolized by the federally registered SYLVANIA mark, for which Sylvania has no adequate remedy at law.

50. Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the federally registered SYLVANIA mark, to Sylvania's great and irreparable harm.

51. Because Defendant has caused and is likely to continue causing substantial injury to the public and to Sylvania, and because this is an exceptional case, Sylvania is entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## SECOND CLAIM FOR RELIEF
### (Federal Unfair Competition and False Designation of Origin)

52. Sylvania repeats and incorporates by reference the allegations in the preceding paragraphs.

53. Defendant's use of the SYLVANIA mark and confusingly similar imitations of the SYLVANIA mark has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's goods are manufactured or distributed by Sylvania, or are affiliated, connected, or associated with Sylvania, or have the sponsorship, endorsement, or approval of Sylvania.

54. Defendant has used false designations of origin, false or misleading descriptions of fact, and false or misleading representations of fact in violation of 15 U.S.C. § 1125(a). Defendant's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception among members of the trade and public, and, additionally, injury to Sylvania's goodwill and reputation as symbolized by the SYLVANIA mark, for which Sylvania has no adequate remedy at law.

55. Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the SYLVANIA mark to the great and irreparable injury of Sylvania.

56. Because Defendant has caused, and is likely to continue causing, substantial injury to the public and to Sylvania, and because this is an exceptional case, Sylvania is entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

## THIRD CLAIM FOR RELIEF
### (Unfair Competition under the Common Law of Massachusetts)

57. Sylvania repeats and incorporates by reference the allegations in the preceding paragraphs.

58. Defendant is passing off or palming off its goods as those of Sylvania.

59. Defendant's unauthorized use of the SYLVANIA mark is likely to cause confusion, or to cause mistake, or to deceive purchasers and customers as to the source, origin, or sponsorship of Defendant's goods. The consuming public is likely to believe Defendant's goods originate from, or are sponsored, authorized, or endorsed by or affiliated with Sylvania when, in fact, they are not.

60. Defendant's unauthorized use of the SYLVANIA mark has been intentionally, deliberately, willfully, and wantonly undertaken with a view and purpose of trading on and benefiting from the substantial reputation and goodwill associated with the SYLVANIA mark.

61. Defendant's conduct alleged herein constitutes unfair competition in violation of the common law of the Commonwealth of Massachusetts.

62. As a direct and proximate result of Defendant's unlawful conduct, as herein alleged, Sylvania has suffered irreparable damage and inherently unquantifiable injury and harm to its business, reputation, and customer goodwill. Such conduct has caused Defendant to achieve sales and profits to which it is not entitled.

63. Defendant's conduct has caused substantial injury to the public and to Sylvania, and Sylvania is entitled to injunctive relief, Defendant's profits, and Sylvania's actual damages, costs, and reasonable attorneys' fees.

## FOURTH CLAIM FOR RELIEF
### (Breach of Contract)

64. Sylvania repeats and incorporates by reference the allegations in the preceding paragraphs.

65. The parties entered into the Agreement.

66. The Agreement is a written, valid, and enforceable contract, and Sylvania has performed its obligations thereunder and seeks to protect its legitimate business interests.

67. In Sections 4.1, 4.3, and 4.7 of the Agreement (as amended by Amendment #2, effective June 1, 2012), Defendant agreed to pay Sylvania minimum earned royalty amounts for fiscal years 2014, 2015, and 2016. To date, Defendant has not paid the full amount of those minimum royalty obligations, and as such, Defendant is in breach of the Agreement.

68. As a direct and proximate result of Defendant's breach of contract, Sylvania has suffered injuries and damages, and will continue to suffer injuries and damages, and Sylvania is entitled to recover the earned royalty payments due under the Agreement, attorneys' fees, and other costs and expenses.

## PRAYER FOR RELIEF

WHEREFORE, Sylvania requests a preliminary and permanent injunction, actual damages, Defendant's profits, costs, attorneys' fees and any other appropriate relief, as follows:

1. That Defendant, and all of its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendant, or in concert or participation with Defendant, and each of them, be preliminarily and permanently enjoined from:

   a. use of the designation "SYLVANIA," and any other word, term, symbol, or device confusingly similar to the SYLVANIA mark, as a trademark, service mark,

    trade name, or other attention-getting device or triggering mechanism for the sale of Defendant's goods;

  b. using any trademark, name, logo, design, or source designation of any kind on or in connection with goods that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to Sylvania's trademarks, trade dresses, names, or logos;

  c. using any trademark, name, logo, design, or source designation of any kind on or in connection with goods that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods are produced or provided by Sylvania, or are sponsored or authorized by Sylvania, or are in any way connected or related to Sylvania;

  d. passing off, palming off, or assisting in passing off or palming off goods as those of Sylvania, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint;

  e. making any oral or written representations that Defendant is connected, associated, or affiliated with Sylvania or otherwise holding itself or its business out as being connected, associated, or affiliated in any way with Sylvania;

  f. during the pendency of this action, erasing, deleting, altering, or destroying any goods in Defendant's possession, custody, or control that bear the SYLVANIA mark or any indistinguishably or confusingly similar imitation thereof;

  2. That Defendant be ordered to deliver up for impoundment and for destruction all goods, clothing, apparel, bags, boxes, labels, tags, signs, packages, receptacles, advertising and promotional materials, stationery, or other materials in the possession, custody, or control of

Defendant that bear the SYLVANIA mark or any indistinguishably or confusingly similar imitation thereof or that otherwise unfairly compete with Sylvania and its goods;

5. That Defendant be compelled to account to Sylvania for any and all profits derived by Defendant from the sale or distribution of the Infringing Goods;

6. That Sylvania be awarded all damages caused by the acts forming the basis of this Complaint;

7. That based on Defendant's knowing, willful, and intentional use of identical, substantially indistinguishable, or confusingly similar imitations of the SYLVANIA mark, the damages awarded be trebled and the award of Defendant's profits be enhanced as provided for by 15 U.S.C. § 1117(a);

8. That Defendant be required to pay to Sylvania the costs and reasonable attorneys' fees incurred by Sylvania in this action pursuant to 15 U.S.C. § 1117(a);

9. That based on Defendant's willful and deliberate infringement of the SYLVANIA mark, and to deter such conduct in the future, Sylvania be awarded punitive damages;

10. Damages for breach of contract against Defendant in an amount to be determined at trial;

11. That Sylvania be awarded prejudgment and post-judgment interest on all monetary awards; and

12. That Sylvania shall have such other and further relief as the Court may deem just.

This 1st day of November, 2016.

    Respectfully submitted,

    **KILPATRICK TOWNSEND & STOCKTON LLP**

    /s/ David Caplan
    David Caplan
    (BBO # 672220)

Kilpatrick Townsend & Stockton LLP
21 Eliot Street
Natick, MA 01760
Tel: (508) 651-4900
Fax: (310) 860-0363
dcaplan@kilpatricktownsend.com

Frederick L. Whitmer
(*pro hac vice* application to be filed)
Kilpatrick Townsend & Stockton LLP
The Grace Building
1114 Avenue of the Americas
New York, NY 10036-7703
Tel: (212) 775-8700
Fax: (212) 775-8800
fwhitmer@kilpatricktownsend.com

Jared S. Welsh
(*pro hac vice* application to be filed)
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4528
Tel: (404) 815-6500
Fax: (404) 815-6555
jwelsh@kilpatricktownsend.com

***Attorneys for Plaintiff OSRAM SYLVANIA Inc.***